Case No. 413-0427. For the appellant we have Thomas Shansley-Haskins, is that how you say it correctly? Shansley-Haskins. Shansley-Haskins. I did pretty good. For the appellee, yes, through CITES, correct? Yes. Okay. Before you begin, the court would like to thank you for moving your application. We do appreciate you accommodating us. And with that, please proceed. May it please the Court, the Court of Counsel, and the CITES. As the Court noted, I represent the appellant in this case, the Illinois Department of Financial and Professional Regulation. The plaintiff, through a case filed under the Illinois Freedom of Information Act, seeks to have the Department disclose the number of initial claims and complaints filed against specific decisions licensed by the Department. As I noted in my brief, and I will note here, there was also a request for formal complaints. There is no dispute that those formal complaints are matters of public record and those were disclosed with the Freedom of Information request. But for three reasons, the Department asserts that disclosure of the information sought is not mandated by the Freedom of Information Act. First, Section 36 of the Medical Practice Act precludes disclosure. The provision of the Medical Practice Act is incorporated into the Freedom of Information Act as an existing confidentiality statute that was in place when the Freedom of Information Act was passed. The plain language of the Medical Practices Act is broad and the specific language is important in this case. The statute provides that all information gathered by the Department during its investigation, including information subpoenaed under Section 23 or 38 of this Act and the investigative file, shall be kept for the confidential use of, essentially, the Department and its agents. The affidavits filed in support of our motion for summary judgment in this case explain how initial claims and complaints are received by the Department. Specifically as to the initial claims, there are several ways in which the Department gathers those. They can be oral or written claims from members of the public. They can be statutorily mandated reporting of judgments against physicians. They can be the reporting of the settlement of malpractice cases by the Department of Insurance. They can be reported by hospitals who have revoked the privileges of licensed physicians. They can come from law enforcement agencies, such as the Drug Enforcement Administration, having to do with physicians' abuse or overprescription of controlled substances. And finally, they may be initiated by the Department itself based upon media reports they may have had or information that is in the public domain that they think warrants an investigation of a licensed physician. The affidavits in support of the motion for summary judgment also indicates what happens when an initial claim comes into the complaint intake unit of the Department. Immediately when it comes in, it is given an investigative file number and is placed in an investigative file. After the file is created and there is some preliminary investigation, it is transferred to the Chief of Medical Investigations within the Department. The Chief of Medical Investigations is then charged with determining whether the initial claim becomes a complaint which needs an additional investigation to determine whether or not formal complaint should be filed. The plaintiff argues that the initial claim and complaint are somehow not a part of the investigative file. I don't believe that the record supports that contention. Essentially, an initial claim or complaint does not exist outside the investigative file of the Department. As I indicated, the moment it comes in or within 24 hours, it is assigned a number and put in the investigative file. The information sought by the plaintiff is clearly covered by Section 36 of the Medical Practice Act. The Act specifically, as I noted, references the investigative file and states that the investigative file is to be kept confidential for the use of the Department. The broader language in the statute, which encompasses all information gathered during the investigation and asserts that that is confidential, also covers the initial claims and complaints sought by the plaintiff in this case. Ultimately, this case is a case involving the propriety of the trial court's ruling relative to a FOIA request. It is the request itself that is the focus here to determine what was actually requested. So, in this case, what did the plaintiff actually request before we get to that point of whether or not there should have been a production method? The plaintiff initially, in the Freedom of Information request, requested the production of documents. The request was then narrowed both in the public access counselor proceeding and in the filing of the complaint in this case to the number of complaints. And I think if you look at the pleadings in this case, it's clear that what is being sought or what was sought in this litigation was filed. And again, this is not administrative review of a binding opinion of the public access counselor. This is litigation initiated under the terms of the Freedom of Information Act. And I think that's an important distinction because we're not limited to the record before PAC. The plaintiff's complaint in this case says that the plaintiff made it clear it has narrowed its request to the number of claims or informal claims filed against each of the identified physicians. And I note in the complaint the word number is italicized to give it emphasis. The exhibits attached to that indicate that the plaintiff asserts at issue in this appeal is whether the number, nothing more of the claims and informal complaints against doctors is information gathered during an investigation. And if that doesn't clearly decrease the scope of the request, I don't think any doubt is left in reading the response to our motion for summary judgment where the plaintiff says, again, because the tribune is not asking for information in the file, that is its contents, but only for information showing the number of claims filed, section 23 is inapplicable. So I think the scope of the request here was initially for the documents but then was changed and there is no way you can construe it. I don't think the pleadings in this case is requesting anything but numbers of initial claims and complaints. Is that information that the department normally maintains? No. They don't maintain records that show that. And as indicated in my brief, an issue that I was going to cover but want to cover now with you, no, it's not. The affidavits, which were again produced in support of the motion for summary judgment, clearly indicate, and this is in the affidavit of Allison Perona that was filed, that this information is not retrievable as a record, it's not an existing record kept by the department. It is not a record that is kept in the ordinary course of business. Miss Perona's affidavit details what would be necessary to do that. You would have to go to the paper file of each physician and she describes how those paper files are kept. There may be multiple files, they may be consolidated, there are multiple files open for physicians. You would have to go through each one of those files and determine within the file whether there were initial complaints or complaints that had been filed and then make a record of those to be able to give the numbers of complaints that were filed. It's not a record that is kept in the ordinary course of business. I believe that the narrowing of the request here from the initial request for documents to a claim for just a request of numbers certainly leads to an inference that that was done because of a recognition that Section 36 of the Medical Practice Act precluded the disclosure of the actual documents. And again, as I said, I believe on the face of the act that the information is shielded from disclosure by the provisions of the Medical Practice Act that we've talked about, just discussed with you. The response of the plaintiff to our other two reasons for the nondisclosure is first, waiver. The plaintiff contends that we waived all of the exemption and defenses which were not raised in the initial denial of the Freedom of Information Act. And as I said, I think an important distinction is that this is not administrative review of the public access counselor's binding opinion. This is litigation under the Freedom of Information Act. The statute governing litigation filed under the act clearly states that appellate review is de novo. The Kopsher case, which I cited in my memorandum, specifically says that defenses and exemptions are not limited to those asserted in the initial denial of litigation filed under the Freedom of Information Act. The second reason that we believe that the plaintiffs are not entitled to the information filed is because their request is a request that the department basically review records and create a list of initial claims and complaints that are requested by the department. I think it's clear, and I've already gone through the facts, I rely on that this is not a request for production of records, that this litigation seeks, as a palisade in the complaint, the number of initial claims and complaints. And I reviewed those portions of the complaint with you. As I said, the affidavit shown here, and I believe it's paragraphs 12, 13, and 14 of the affidavit of Allison Perona, which was filed in this case, clearly details the fact that these records are not kept in the ordinary course of business. I won't read the entire affidavit to you, but she sets out facts and indicates that the department maintains no record-keeping system which can produce a list of the initial complaints, the initial claims or complaints as defined in the regulation. So what they're asking for is us to go through, search our files, and create a record for them that doesn't exist during the ordinary course of business. And I made the analogy, I think, in my brief that it's like sending a set of interrogatories to the department and asking them to answer. It would lead to a situation where if this were the law and someone wanted to know every complaint which mentions OxyContin, then if that were permissible, then the department would have to search all its files, look at every complaint, and determine which ones mentioned in the litany of drugs OxyContin. But it's not, because the files are not sent out by complaints about individual drugs. So that is not the facts in this case, but that is certainly a ramification of a ruling that it's permissible to send questions to the department and ask them to answer those questions by producing or creating a record. There were two requests, or at least two letters that set forth a number of requests, at least in the first letter and then in the second one, I think, not as many requests. But what struck me is that I'm not sure that any of the line item requests requested documents, but requested information. And the department actually responded to some of those requests for information and actually provided that. I believe that they asked for initial claims, or they may have said initial complaints. Initial claims, complaints, and formal complaints. I believe that all those, looking back at the record, were in... determining the equivalent of interrogatories. And the department actually responded and provided information. So there was what appeared to be at least a course of conduct that preceded the department digging in on this. I believe what they provided was essentially a summary of what was in the formal complaints, which were the documents that were provided. Okay. But did they respond to questions as opposed to producing records? I think they produced records and then summarized what was in the produced records as to the name of the physician, the date that the imposition or the discipline was imposed, and that sort of thing, which were part of the formal complaint process. Frankly, that's not something that I reviewed in preparing for the oral argument today. I did not go back and attempt to compare the documents produced against the narrative in the response to the Freedom of Information Act. I do know that they asserted their objection to the production of the initial claims and the complaints in the process and did not produce those. But I believe the information, and again, this is not from a detailed going back and reviewing them. I believe my recollection is that the information that was contained in the responses to the Freedom of Information Act was essentially what was in the formal complaints, which is a matter of public record. But I believe that, again, the case law and the language of the Freedom of Information Act clearly states that the Act does not create an obligation to maintain or create a public record that this does not exist. I believe that is both the law and the case law and on the face of the Freedom of Information Act. The third issue that is raised in this appeal is based upon the due process rights of Illinois physicians to preserve a blemish-free license as recognized by the Seventh Circuit in this decision in Fleury v. Clayton. In the Fleury case, the Seventh Circuit recognized statutory standards for professional physician discipline in Illinois, established a property interest and a blemish-free license to practice medicine, which triggered the requirements of a constitutional due process. The plaintiff, in their brief, suggests that the Seventh Circuit decision in the Abkarian case precludes our argument based upon due process because the information sought by them, which was not provided, did not involve actual discipline of a physician, but were preliminary documents within the investigative file. I believe that the Abkarian case is distinguishable. In Abkarian, the University of Illinois reported settlement of malpractice cases to state and national professional authorities. The defendants in the Abkarian case were the University of Illinois and its employees. The court noted in Abkarian that those defendants did not have the power to discipline physicians. Abkarian noted that the blemish-free license language in Fleury applied only to defendants which were able to discipline physicians, and that is the nature of the defendant in this case. The issue presented here requires looking at the regulations promulgated under the Medical Practices Act to implement it. In addition to initial claims, the plaintiffs here seek complaints against licensed physicians. The nature of a complaint is, as described in the regulation, it is an initial claim which results from the determination that the initial claim presents a potential violation of the Medical Practices Act. So in order to create a complaint from an initial claim, the department, specifically the Chief of Medical Investigation, has to make a determination that the complaint constitutes a potential violation of the Act. The licensed physician is given no opportunity for notice, hearing, or for any input when the determination is made by the department that the initial claim constitutes a potential violation of the Act. So I believe that under Fleury there is an open question as to whether or not a disclosure that a determination that the physician's conduct constitutes a potential violation of the Medical Practices Act creates a blemish on the license of the physician which requires due process. Is there any state court decision that has interpreted Fleury? I'm not aware of any that has interpreted Fleury. But as to the determination of whether or not a decision that the initial complaint is a potential violation of the Act requires due process is actually one which may depend upon facts which were not before the trial court. I believe there is a distinction between the disclosure perhaps of one complaint which would create a blemish as opposed to the disclosure of 20 complaints in which there were determined to be potential violations. I'm sure that that distinction would be important to a physician who's going to have disclosure of the complaints on file with the Department of Professional Regulation, the Seventh Circuit in the Suarez case, which we decided held that there is little doubt that a person's interest and his reputation is sufficient to trigger procedural due process. Counsel, you're out of time, but you will have rebuttal. All right. Thank you. Thank you. May it please the Court, my name is Esther Seitz and I represent the Chicago Tribune. What's really important about this case is that this case clearly is about a request for records. Yes, those records pertain to specific information and it was in this case limited to information showing the number of initial claims received by the Department about 22 physicians that were specifically identified by my client. But what we're looking for are records. We're simply looking for records that show how many initial claims were received in connection with each of these doctors. And so the fact that we're looking for numbers doesn't mean that we are looking for the Department to create a list of numbers for us. But rather, it is clear from the Department's own filings that every time it receives an initial claim, it actually creates a record. And the affidavit of Ms. Perona says that whenever the Department receives an initial claim, they create a file. The file is opened and the initial claim is docketed. Even if they are not able to identify the physician, they're not able to get a hold of him. She says they create a record for every initial claim that's received. So it's difficult for us to believe the Department's argument now, here before this Court, which is that these files are not kept in the ordinary course of business. Additionally, the Administrative Code, 68 Administrative Code, Section 1285-215B, says that all initial claims shall be recorded. And when the Department receives these initial claims and records them or creates a file, then there has to be a record. What we're seeking is not necessarily the contents of what is the substance of what's in the record, but records showing how many claims the Department received. So even if the Department produces each record that was created in response to an initial claim that it received, now it can redact that record entirely, but as long as it produces to us records showing the number of initial claims that it receives in connection with these 22 gentlemen, or I think there's one lady, then that would be responsive to our request. That would respond to our request, and if those are available and the law says that they ought to be available and the Corona Affidavit confirms that they are in fact created, then under the FOIA, they have to be released. We're not asking the Department. I'm not sure I follow what you're saying. You said they redact everything? No. What is left? What we are looking for is simply the number of initial claims that the Department receives. So even if a lot of the information in the record that the Department creates when it receives an initial claim is redacted, the production of whatever the kind of the shell of the record showing that creation... So if I understand, a claim results in a file or record. That's right. And then what you're asking for then is assume the file has a number on it. Everything gets redacted except for the number. You wouldn't leave the name, but in that sense you would be able to get the information you need? We wouldn't necessarily have the contents of what is in the file, but we would have the number of initial claims that the Department received in connection with a specific position. So, for example, if for Mr. Jones the Department has received one initial claim, there has to be a file that goes along with that initial claim because that's what the Department says it does. What would the form be that a response to this request would take? In other words, let's say that the trial court upheld the FOIA request and we upheld that ruling and the Department was required to respond to the request. What would the form of the response take? I'm not sure what the records of the Department look like obviously, but it could be just a file that says initial claims concerning Dr. Jones. And then the contents of what this person was accused of doing could be redacted. Again, we did limit our request to the number of initial claims received, but the production of that file or of that record showing the receipt of an initial claim would allow my client to see how many initial claims the Department had received in connection with that particular physician who was later reprimanded. And you are literally asking for a number, so Dr. Jones initial claims, 10? No, we are looking for records that show how many initial claims the Department has received. So wouldn't the Department have to create something new to provide that to you? No, it would not have to. And the reason for that is because every time the Department receives an initial claim from a citizen, for example, it creates a file already. So I get a complaint on the Department. I create this docket, so to say. And for Mr. Dr. Jones, I've created three initial claims files because that's how many initial claims I've received. So even though I'm on the Department now faced with a request for records from the Tribune where they're looking for records showing the number of initial claims received by me, the Department, then I release the records that show that I have received an initial claim, even though I can withhold, because it wasn't requested, the contents of the allegation against the physician. So release all the files, redact the information in the files, and that's how you get to the number. Right. Now, if they want to redact. We're not saying they have to redact. We're perfectly fine receiving whatever they want to give to us. But what we're really interested in is records showing the number of initial claims. You've heard the argument made that the actual form of the request that's been presented in the trial court now here isn't for a record, but for a number. So would you agree that if you were requesting a record here, it would have been a request for initial claims, an identifiable document that you know that that's its title. Why not just request that document? Well, we were left essentially defending or prosecuting this FOIA request as it was filed by the reporter. But the reporter along and our firm was clear that this is a request for records. It's a request for Freedom of Information Act. That is a public record statute. And what we want is records that show this. In the original letter, didn't the reporter actually use the term initial claim? I mean, wouldn't that have allowed you to just proceed on that path? Or if you wanted to clarify, say, we are requesting the initial claim form? She did say that she was interested in, you're right, there were a list of things she was interested in at the time, but she was looking for the number of, and I think the terminology she used was a little bit off, because that's the department's lingo. But I think now we know that the initial document they received is an initial claim. I think she said an initial complaint. But the department has then produced the complaint, what they call a complaint, which is something that happens later. They first receive the initial claim, then there's this preliminary proceeding or investigation, and then there's the complaint and the formal complaint. So they agree that the complaint is something that ought to be released now, and they understood the initial complaint to stand for initial claim. It was just the very first document that is received by the department in connection with an allegation against the physician. I think everybody's clear that that's what we're seeking. Now, we're not asking the department to compile or produce a record for us. Those records already exist, and we simply want the production of records that show how many initial complaints were received by the department in connection with these 22 individuals. There are obviously a few exemptions that are cited and briefed in our argument, but the only one that was properly invoked is Section 36 of the Medical Practice Act, and that exemption was actually only properly invoked with respect to request one. It was not invoked in connection with request number two. Therefore, that is the only exemption that's applicable, and again, only with respect to request one, and the others are waived. And the reason they are waived is because the FOIA is very clear that if a public body wants to invoke an exemption, it shall do so within five business days, and it has to supply not only the legal basis but also a detailed factual basis for why a specific record can be withheld. Here, that didn't happen. The department cited FLURRY, cited the Medical Practice Act in connection with the second request, and the fact that these records somehow don't exist only later, before the PAC, and then again before the Circuit Court. But that is not the way that they should be invoking exemption. They should be invoking them if at all. Again, exemptions are not mandatory. They're simply something that they can avail themselves of. But if they want to do that, then they need to do it within the first five days under Section 9. And the court in Rock River Times, the Second District Appellate Court, said that there is no indication in the FOIA that there's an opportunity for a public body to invoke an exemption beyond that initial five-day window. Therefore, the FLURRY claim is waived, and also the claim that these somehow can be produced, which just flies in the face of what is in Ms. Perrone's affidavit and in the Administrative Code anyways. The argument under Section 36 of the Malpractice Act would be triggered under Section 1A of the Freedom of Information Act, which is the exemption that applies to matters that are specifically prohibited under another law. And this court in Federal Government Association v. Blagojevich said that the specifically prohibited language, that means that it really needs to be specifically prohibited. That is, not just maybe prohibited or possibly prohibited, but it has to be very clearly prohibited from release. And here, the Medical Practice Act, specifically Section 36, is not so clear that this initial claim, the receipt of initial claims, the existence of those initial claims, are specifically prohibited. And again, exemptions have to be narrowly construed. So if there's any ambiguity, the courts should lean in favor of disclosure because that is the point of the FOIA. Now, the Administrative Code has an exception for information gathered by the Department during its investigation. Investigation is a term that is not defined in the Medical Practice Act, but it is defined in the Administrative Code. And when the Administrative Code defines investigation, initial claim, and complaint, and all those terms, it becomes clear that the initial claim is the first thing that's received by the Department, then it engages in this preliminary analysis, and then that results in a complaint, which might then result in an investigation. Now, the matters that are gathered, that is selected by the Department as part of the investigation, certainly are exempt, but that is not what an initial claim is. And that's what the Public Access Counselor's Office said as well. The initial claim is simply something that is mailed to the Department by some complaining patient, a law enforcement agency, and it is not something that is part of the investigative phase of the Department. It is also not something that is actively gathered by the Department. It's simply something that is received by the Department. Therefore, Section 36 of the Medical Practice Act does not apply. We would therefore ask that you affirm the well-recent decision of the Public Access Counselor, and also the decision of the Circuit Court. And unless you have any further questions, I am finished. Seeing none, thank you very much. We will now have rebuttal. Thank you. Thank you, Your Honor. I believe that the plaintiffs in this case are stuck with their pleadings. Again, this is not an administrative review proceeding, and I have reviewed with you the language that I think is clear from the pleadings. It indicates that this is not a request for documents. It's a request for records. And I don't see how you can say when you have a response to a summary judgment that says, again, because the Tribune is not asking for information in the file, that is its contents, but only information showing that the number of claims filed, Section 23, is inapplicable. They are asking here for numbers. And the reason they are asking for numbers is because the actual disclosure of the documents is covered by the Medical Practice Act, which is incorporated into the Freedom of Information Act through the statute. And in response to the argument that the language is not specific, the language is broad, and it is specific. It's all information gathered by the Department during its investigation, including basically subpoenaed information and the investigative file. The evidence in this case is the evidence contained in the affidavits submitted by the Department. The plaintiffs had an opportunity to depose those witnesses if they wanted to or present other information, but the only information in the record, and I've detailed that for you, indicates that when the complaint is received, and it's not just something that's mailed, it can be something that's initiated by the Department itself, but when those complaints are received, they are put in an investigative file and given an investigative file. And the affidavit of Allison Corona says in detail what happens with that and what records are kept. And for Ms. Seitz to say, well, we really don't think that there aren't records that are kept in the ordinary course of business to disclose that. Well, the only evidence before the Court is the affidavit of Allison Corona, and she says, in our computerized record-keeping system, the Department has a record and can retrieve the numbers of files associated with the named licensee under the Act. This record will not, however, provide the initial claims or complaints contained in the file concerning the particular licensee. In order to make that determination, employees of the Department would be required to review each paper file bearing the name of the particular physician. I'm not going to read the entire affidavit to you, but that's the record before the Court. There isn't a record that shows what the plaintiffs seek without going through all these files and making one. And the Freedom of Information Act does not require you to do that. I've addressed the de novo provisions of the statute, which deal both with the trial and appellate review. Review is de novo. The fact that the exemption is not asserted in the initial response does not preclude asserting it in litigation. Based upon the information in the briefs, the information provided in the oral arguments here with the questioning of the Court, we would request that the Court reverse the granting of summary judgment on the plaintiff's motion, reverse the denial of the defendant's motion for summary judgment, and enter an order providing that the information requested by the plaintiffs is not necessarily to be disclosed under the Freedom of Information Act. If you have any further questions, I'll answer them. Thank you for your attention. Thank you, Counselors. The case is submitted and the Court stands in recess until further call. Thank you.